# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DARREN WINSLOW,

       Petitioner,

v.                                Case No. 3:15-cv-155-J-32MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I.   <u>Status</u>

Petitioner Darren Winslow, an inmate of the Florida penal system, initiated this action with the assistance of counsel by filing a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1, Petition) on February 11, 2015. Winslow challenges a 2012 state court (Nassau County, Florida) conviction for sexual battery of a child twelve years of age or older but less than eighteen years of age by a person in familial or custodial authority. The circuit court sentenced Winslow to incarceration for a term of twelve years, followed by a ten-year term of sex offender probation.

Respondents filed a Response to the Petition. <u>See</u> Answer to Petition for Writ of Habeas Corpus (Doc. 10; Resp.) with exhibits (Resp. Ex.). Winslow, through counsel, filed a Reply. <u>See</u> Petitioner Darren Winslow's Reply to Respondents' Answer to Winslow's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 12; Reply).

In compliance with the Court's inquiry, <u>see</u> Doc. 16, Winslow, through counsel, notified the Court that he was not requesting an evidentiary hearing on his Petition, but was suggesting that the Court conduct a non-evidentiary oral argument. <u>See</u> Doc. 17. As such, over Respondents' objection, <u>see</u> Doc. 18, the Court conducted a non-evidentiary oral argument on March 12, 2018, in which the Court heard argument from counsel for both parties, the transcript of which is incorporated herein. <u>See</u> Doc. 19; Doc. 23. This case is ripe for review.

## II.   <u>Relevant Procedural History</u>

On October 15, 2010, the state of Florida filed an amended information charging Winslow with five counts of sexual battery of a child twelve years of age or older but less than eighteen years of age by a person in familial or custodial authority (counts one-five), and two counts of lewd or lascivious molestation (counts six and seven). Resp. Ex. 2 at 3-4. On March 29, 2011, Winslow's trial attorney, Assistant Public Defender Thomas E. Townsend, Jr., filed a "suggestion of mental incompetence to proceed and motion for examination" alleging that on March 21, 2011, Dr. William R. Meadows conducted a competency evaluation on Winslow and found Winslow "incompetent to proceed" based upon a diagnosis of acute stress disorder. Resp. Ex. 3.

In consideration of Dr. Meadows' conclusion, Mr. Townsend requested that the circuit court issue an order for further evaluation pursuant to Florida Rule of Criminal Procedure 3.210. <u>Id.</u> On April 8, 2011, the circuit court granted Mr. Townsend's request and appointed Dr. Larry Neidigh as a disinterested, qualified expert to conduct a second competency examination on Winslow. Resp. Ex. 4. Dr. Neidigh

conducted his evaluation on April 13, 2011, and found Winslow competent, but explained that Winslow engaged in "symptom exaggeration and malingering." Resp. Ex. 5.

Thereafter, Mr. Townsend filed a "motion for appointment of expert to conduct a third competency examination." Resp. Ex. 6. The circuit court granted the motion and appointed Dr. Umesh Mhatre to perform a third competency assessment on Winslow. Resp. Ex. 7. Dr. Mhatre conducted his examination on May 14, 2011, and found that Winslow was competent, though he was engaging in an "elaborate plan to malinger." Resp. Ex. 8. Despite this conclusion, Dr. Mhatre recommended that Winslow "be committed to the State Hospital to get 100% confirmation of a diagnosis of malingering" because the charges pending against him were so severe. Id.

Upon review of the circuit court's docket, however, it appears that on or about May 6, 2011, before Dr. Mhatre's evaluation, Mr. Townsend filed a motion to withdraw as counsel and a notification of attorney conflict.[1] See State v. Winslow, 2010-CF-722 (Fla. 4th Cir. Ct.). It appears that the circuit court appointed another attorney on or about May 9, 2011. Id. However, it seems Winslow's second appointed counsel withdrew on or about October 14, 2011, and the circuit court appointed a third attorney, Ms. S. Nicole Jamieson (Ms. Jamieson).[2] Id.; see also Resp. Ex. 9.

---

[1] The Court is unaware of the nature of Mr. Townsend's alleged conflict; however, Winslow reported to Dr. Mhatre that "[m]y lawyer, Mr. Townsend, was against me and I had to get rid of him." Resp. Ex. 8 at 4.

[2] It is unclear when the circuit court appointed Ms. Jamieson to represent Winslow, but the Court infers the circuit court appointed her on or about October 14, 2011, when the second appointed attorney withdrew.

On March 15, 2012, Ms. Jamieson filed a motion to appoint Dr. Stephen Bloomfield as a mental health expert to conduct a confidential examination of Winslow in preparation for a defense. Resp. Ex. 9. The circuit court granted Ms. Jamieson's request and appointed Dr. Bloomfield; however, it is unclear if Dr. Bloomfield conducted an evaluation. Resp. Ex. 10. On June 26, 2012, Ms. Jamieson filed a motion to appoint Dr. Neidigh to conduct a confidential psychosexual examination of Winslow in preparation for a defense. Resp. Ex. 12. The circuit court granted Ms. Jamieson's request. Resp. Ex. 13. Upon review of the circuit court docket, it appears a third motion to appoint a mental health expert for a psychosexual examination was filed on or about August 17, 2012, and the circuit court entered an order on this third request on August 30, 2012. See Winslow, 2010-CF-722. It is unclear if a third psychosexual examination was conducted.

On September 6, 2012, Winslow entered a negotiated plea of guilty to count one. See Ex. 14. That same day, in accordance with his negotiated plea, the circuit court sentenced Winslow to incarceration for a term of twelve years, followed by a ten-year term of sex offender probation. Resp. Ex. 15 at 10. Pursuant to the plea agreement, the state nolle prossed counts two through seven and waived all costs associated with Winslow's sex offender probation monitoring and costs of supervision for the first twelve months of probation. Resp. Ex. 14. Winslow did not seek a direct appeal of his judgment and sentence.

## III.  **Winslow's Allegation and Analysis**

In this action, Winslow raises one ground for relief claiming that counsel was ineffective for failing to request a competency hearing. <u>See</u> Reply at 1. Winslow contends that counsel's failure to request a competency hearing deprived Winslow of his fundamental right to be tried while competent. <u>See</u> Doc. 12 at 4. Winslow further avers that counsel was ineffective because he was required under Florida Rules of Criminal Procedure 3.210 and 3.212 to request a competency hearing after Dr. Meadows and Dr. Mhatre recommended that Winslow undergo further treatment or testing. <u>Id.</u> at 8. According to Winslow, counsel's failure to request a competency hearing prejudiced him because there was a reasonable probability that he would have been found incompetent to enter a guilty plea if such a hearing was held. <u>Id.</u> at 11.[3]

Winslow raised a similar ineffective assistance of counsel claim in his state court motion for postconviction relief filed through counsel pursuant to Florida Rule of Criminal Procedure 3.850. <u>See</u> Resp. Ex. 27. The circuit court ultimately denied the claim, finding in pertinent part:

---

[3] Respondents note that the Petition is barebones and vague on whether Winslow's claim is an assertion of trial court error or ineffective assistance of counsel. Resp. at 22-23. In his Reply, however, Winslow clarifies that he is raising a claim of ineffective assistance of counsel premised upon counsel's failure to request a competency hearing, and that such failure resulted in substantive and procedural due process violations. Generally, the Court need not consider claims raised for the first time in a reply brief. Winslow did not seek leave to amend his Petition to add constitutional due process claims based on ineffective assistance of counsel after Respondents filed their Response. <u>See</u> Fed. R. Civ. P. 15(a)(2); <u>see also</u> <u>Oliveiri v. United States</u>, 717 F. App'x 966, 967 (11th Cir. 2018); <u>Garcia v. Sec'y, Dep't. of Corr.</u>, No. 8:10-cv-2116-T-27MAP, 2013 WL 3776674, at *4-5 (M.D. Fla. July 17, 2013). Despite this procedural deficiency, the Court considers Winslow's current claim.

> Ground 3 and 4: Defendant alleges that because two examiners had recommended defendant go to a mental hospital a competency hearing should have been held. Attached hereto are copies of the examiners' reports referred to by defendant:
>
> Report of Umesh M. Mhatre, M.D.: "In my opinion, Darren Robert Winslow, is competent to proceed, but is choosing to play games." <u>See</u> page 6.
>
> Report of Larry Neidigh, Ph.D.: ["]Darren Robert Winslow, appears to be a person of normal intelligence who is not experiencing any significant mental health difficulties or underlying psychopathology." <u>See</u> page 6.

Resp. Ex. 28. Winslow appealed the circuit court's denial, <u>see</u> Resp. Ex. 30, and the First District Court of Appeal (First DCA) per curiam affirmed the denial without issuing a written opinion. Resp. Ex. 32.

## A. Standards Under AEDPA and Ineffective Assistance of Counsel

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert. denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100

(2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing

> Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme
> Court has repeatedly instructed lower federal courts that an
> unreasonable application of law requires more than mere
> error or even clear error. See, e.g., Mitchell v. Esparza, 540
> U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of
> clear error fails to give proper deference to state courts by
> conflating error (even clear error) with unreasonableness.");
> Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n
> unreasonable application of federal law is different from an
> incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations

modified).

This Petition contains claims of ineffective assistance of counsel. "The Sixth

Amendment guarantees criminal defendants effective assistance of counsel. That right

is denied when a defense counsel's performance falls below an objective standard of

reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S.

1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and

Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective

assistance, a person must show that: (1) counsel's performance was outside the wide

range of reasonable, professional assistance; and (2) counsel's deficient performance

prejudiced the challenger in that there is a reasonable probability that the outcome of

the proceeding would have been different absent counsel's deficient performance.

Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the

Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010).

Since both prongs of the two-part Strickland test must be satisfied to show a Sixth

Amendment violation, "a court need not address the performance prong if the

petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel, 822 F.3d at 1262 (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

**B. Merits**

To the extent that the First DCA affirmed the circuit court's denial on the merits,[4] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Winslow is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, Winslow is still not entitled to the relief he seeks. When evaluating claims involving counsel's failure to request a competency hearing, the Court finds the following explanation of Strickland's two-prong test instructive. See Thompson v. State, 88 So. 3d 312, 320 (Fla. 4th DCA 2012).

> To satisfy the deficiency prong based on counsel's handling of a competency issue, the postconviction movant must allege specific facts showing that a reasonably competent attorney would have questioned competence to proceed. The standard for competency to proceed is set out in Dusky v. United States, 362 U.S. 402, 80 S. Ct. 788 (1960), and codified in Florida Rule of Criminal Procedure 3.211. The question is "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual understanding of the pending proceedings." Fla. R. Crim. P. 3.211(a)(1). Conclusory

---

[4] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

allegations of incompetency are not enough to warrant an evidentiary hearing. See Atwater v. State, 788 So. 2d 223, 229 (Fla. 2001). "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather the evidence must indicate a present inability to assist counsel or understand the charges." Card v. Singletary, 981 F.2d 481, 487-88 (11th Cir. 1992). "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Medina [v. Singletary], 59 F. 3d [1095], 1107 [(11th Cir. 1995)].

The prejudice standard that applies to a typical claim of ineffective assistance of counsel, whether a reasonable probability exists that the outcome of the proceeding would differ, is ill-suited to a claim of alleged incompetency. The issue is not whether the outcome of the trial would have differed. Likewise, the Pate[5] presumption and standard are inapplicable. The issue is not whether, had counsel acted differently, the court would have been required to hold a competency hearing under Rule 3.210. The focus of the prejudice inquiry is on actual prejudice, whether, because of counsel's deficient performance, the defendant's substantive due process right not to be tried while incompetent was violated. In order to establish prejudice in a properly raised ineffective assistance of counsel claim, the postconviction movant must, as with a substantive incompetency claim, set forth clear and convincing circumstances that create a real, substantial and legitimate doubt as to the movant's competency.

Thompson, 88 So. 3d at 319. In determining whether the movant has set forth clear and convincing circumstances that create a real, substantial, and legitimate doubt as to competency, a court considers the totality of the circumstances, including:

(1) the nature of the mental illness or defect which forms the basis for the alleged incompetency; (2) whether the movant has a history of mental illness or documentation to support the allegations; (3) whether the movant was receiving treatment for the condition during the relevant period; (4)

---

[5] Pate v. Robinson, 383 U.S. 375 (1966).

> whether experts have previously or subsequently opined
> that [the movant] was incompetent; and (5) whether there
> is record evidence suggesting that the movant did not meet
> the <u>Dusky</u> standard during the relevant time period.

<u>Id.</u> at 320.

Here, Winslow fails to sufficiently demonstrate the deficiency prong regarding counsel's alleged failure to request a competency hearing. Winslow does not demonstrate that a reasonable competent attorney would have questioned whether Winslow had sufficient present ability to consult with counsel. Instead, Winslow relies on Dr. Meadows' report that counsel was having attorney-client consultation issues because "Mr. Winslow [was] yelling at him, sobbing uncontrollably, and showing other emotional problems." Reply at 6; <u>see also</u> Resp. Ex. 3 at 1. According to Winslow, his consultation issues with counsel were comparable to the issues described in <u>United States v. Wingo</u>, 789 F.3d 1226 (11th Cir. 2015). <u>See</u> Reply at 5-7; <u>see also</u> Doc. 23 at 9. However, Dr. Meadows' finding that Winslow suffered from "acute stress" is undoubtedly distinguishable from the debilitating, unanticipated effects of Wingo's lifelong craniosynostosis resulting in early-onset dementia. <u>See</u> <u>Wingo</u>, 789 F.3d at 1231-33.

The Court also finds that Winslow has failed to demonstrate that a reasonable competent attorney would have questioned whether Winslow had a rational, as well as factual understanding of his criminal proceeding. Winslow relies on Dr. Meadows' finding that Winslow was unable to remember key details of the crime he committed to support his claim that he did not understand the proceedings. Reply at 6. A thorough review of Dr. Meadows' report, however, indicates that Dr. Meadows could

not definitively determine whether Winslow had genuine disturbances in memory. Resp. Ex. 3 at 3. Further, Dr. Mhatre and Dr. Neidigh found that Winslow's reported memory lapses were highly indicative of malingering as such severe memory loss can only be associated with a brain injury, and there was no evidence that Winslow sustained such an injury. Resp. Exs. 5 at 6; 8.

In addition, Winslow's claims of deficiency pertain to alleged omissions that occurred while Mr. Townsend was representing Winslow. However, the relevant analysis considers the reasonableness of counsel's competency inquiry at the time Winslow entered his plea. Mr. Townsend's decisions were immaterial to Ms. Jamieson's perception of Winslow's competency. Thus, the Court finds that Winslow's "acute stress disorder" and purported memory loss, documented during Mr. Townsend's representation, are inadequate to demonstrate that a reasonable attorney would have questioned Winslow's competency at the time he plead guilty. Considering the totality of the opinions on Winslow's competency given by the various doctors, a reasonable attorney could have determined that a competency hearing was not necessary.

Moreover, Winslow's conclusory allegation that counsel acted deficiently because he was obligated under Florida Rule of Criminal Procedure 3.212 to request a competency hearing following Dr. Meadows' evaluation is misplaced. Reply at 9; see also Doc. 23 at 5-6. In claiming such a procedural due process violation, Winslow is essentially requesting that the Court recognize a presumption of incompetency that typically occurs when a movant raises a Pate claim on direct appeal. See Pate, 383

U.S. at 385 (holding a trial court's failure to <u>sua</u> <u>sponte</u> order a competency hearing can result in a denial of procedural due process). Indeed, the majority of cases Winslow presented to the Court in support of this claim are state appellate court decisions rendered on direct appeal, and address claims of trial court error for failing to hold a competency hearing after a Rule 3.210(b) motion was filed. <u>See</u> Docs. 13; 14; 15; 20.

In this habeas case, however, Winslow is not asserting a claim of trial court error that would properly be raised on direct appeal, but is instead alleging a collateral claim of ineffective assistance of counsel, and a presumption of incompetency does not apply in this postconviction posture. <u>See</u> <u>James v. Singletary</u>, 957 F.2d 1562, 1571-72 (11th Cir. 1992) (holding "<u>Pate</u> claims can and must be raised on direct appeal"); <u>Thompson</u>, 88 So. 3d at 320 (finding "[t]he wider protective net case in a direct appeal by the <u>Pate</u> presumption is inappropriate to a postconviction claim of ineffective assistance of counsel"). Instead, for purposes of this Court's analysis, Winslow is presumed to have been competent at the time he entered his plea, and the burden is on him to show otherwise. <u>Thompson</u>, 88 So. 3d 312, 320 (Fla. 4th DCA 2012); <u>see also</u> <u>Lawrence v. Sec'y, Fla. Dep't of Corr.</u>, 700 F.3d 464, 481 (11th Cir. 2012) (holding that a petitioner alleging a substantive competency claim in a postconviction motion is not entitled to a presumption of incompetency). As such, the Court finds that Winslow's procedural due process and presumption of incompetency allegations are inadequate to demonstrate deficient performance.

Nonetheless, assuming <u>arguendo</u> that counsel acted deficiently, Winslow cannot meet the high threshold of actual prejudice associated with his allegation.

Other than his overly general substantive due process argument, Winslow never claims that he was actually incompetent when he entered his plea of guilty. Rather, he argues only that there is a "reasonable probability" or it is "entirely likely" that he would have been found incompetent to enter a plea if counsel had requested a competency hearing. Reply at 11-12. Winslow's prejudice argument is unavailing as he does not present "clear and convincing circumstances" that create a "real, substantial, and legitimate doubt" regarding his mental capacity at the time of his plea. In reaching this conclusion, the Court considers the totality of the circumstances surrounding Winslow's plea, including the five factors mentioned in Thompson, 88 So. 3d at 320.

First, the nature of the mental illnesses or defects which form the basis for Winslow's allegation are not ones generally associated with incompetency. Dr. Meadows' report indicates that Winslow was suffering from "acute stress disorder," hearing loss in his left year, and sleep apnea. Resp. Ex. 3. Winslow reported to Dr. Neidigh that he suffered from depression, anxiety, and auditory and visual hallucinations. Resp. Ex. 5. Yet, Winslow did not present any symptoms typically associated with psychotic impairments and there is no evidence that any doctor actually witnessed Winslow experience a psychotic episode. Id. The Court also finds Winslow's claim regarding memory loss unpersuasive. Winslow reported that his memory loss transpired three months prior to his competency evaluations. Resp. Ex. 8. However, according to Dr. Mhatre, "there is no rational medical reasoning why suddenly, 3 months ago, Mr. Winslow would have had such serious memory lapses" as

such "gross memory impairment can only occur with a permanent injury to the brain." Id. According to Dr. Mhatre, Winslow's memory lapses were "definitely indicative of malingering." Id. at 5.

Second, the Court finds that there is no evidence that Winslow has a history of mental illness and Winslow does not present any documentary evidence to support his claim of incompetence. While Dr. Meadows' may have attempted to corroborate information he received, his conclusion that Winslow was incompetent was largely based on Winslow's own self-report. Conversely, Dr. Neidigh's April 13, 2011, conclusion that Winslow was competent yet engaging in malingering was supported by the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) and the M-FAST, two empirically derived and widely known tests used to detect malingering of psychiatric symptoms. Resp. Ex. 5 at 5. According to Dr. Neidigh, Winslow's April 13, 2011, MMPI-2 results produced a clearly invalid "fake bad" profile indicative of someone who is malingering severe symptoms in an attempt to present himself as more severely disabled than he actually is. Id. Winslow's M-FAST test also reflected a high probability of malingering. Id. Of more relevance is Dr. Neidigh's August 15, 2012, re-administration of the MMPI-2, in which Winslow produced a valid profile with no evidence of significant mental health difficulties or clinical psychopathology. Resp. Ex. 28 at 9.

Nothing in the state court record indicates that Winslow was illiterate. He has never been Baker Acted nor diagnosed with schizophrenia or a similar mental disability suggesting incompetence. Winslow denied having a history of psychiatric

treatment, he has never been admitted to a psychiatric facility, and has never been prescribed psychotropic medication. Resp. Ex. 3. Rather, Winslow had a normal childhood, was never enrolled in special education courses, he has never received social security disability benefits, and there is no evidence that Winslow experienced any form of significant trauma. Resp. Exs. 3; 5 at 2; 8. Winslow served in the United States Navy for twenty years before being honorably discharged and maintained gainful employment until his arrest for the subject crimes. Resp. Exs. 3; 5 at 2; 8.

Third, there is very little evidence that Winslow required treatment for his alleged condition at the time he entered his plea. At the time of Dr. Meadows' evaluation, Winslow was not receiving any medication at the detention facility. Resp. Ex. 3 at 3. Dr. Neidigh reported that at the time of his April 13, 2011, evaluation, Winslow was "not suffering from any physical conditions that would require him to take medications to affect emotional or behavioral functioning." Resp. Ex. 5. However, Dr. Neidigh and Dr. Mhatre reported that Winslow was prescribed Risperdal during his incarceration, though it is unclear why the medication was prescribed. Resp. Exs. 5 at 3; 8 at 4. Further, Dr. Neidigh's August 15, 2012, psychosexual evaluation states that Winslow was only prescribed Risperdal for a "brief period of time," and there is no evidence that Winslow was still taking the medication during the August 15, 2012, evaluation. Resp. Ex. 28. Indeed, during Winslow's plea colloquy, the circuit court judge asked Winslow if he was currently under the influence of any medication, to which Winslow replied, "No, sir." Resp. Ex. 15 at 8.

Fourth, the Court acknowledges Dr. Meadows' finding that Winslow was incompetent. Resp. Ex. 3. However, Dr. Meadows' report explained that Winslow's symptoms were "amenable to treatment" and found "a substantial likelihood that Mr. Winslow can be restored to competency within the next three months at an inpatient facility." Id. at 5. In addition, the temporal relationship between Dr. Meadows' evaluation and the date Winslow entered his plea of guilty is compelling. Less than one month after Dr. Meadows' examination, Dr. Neidigh found that Winslow was competent, but clearly engaging in "symptom exaggeration and malingering." Resp. Ex. 5. If Winslow was considered competent within one month of Dr. Meadows' examination, he can hardly rely on Dr. Meadows' report to adequately challenge his competency seventeen months later when he entered his plea of guilty.

Moreover, while Dr. Mhatre later recommended that Winslow undergo further inpatient observation to confirm malingering, Dr. Mhatre's conclusion that Winslow was competent was unequivocal. Resp. Ex. 8. There is no record evidence that defense counsel or the circuit court questioned Winslow's competency after Dr. Mhatre conducted his May 14, 2011, evaluation. Likewise, while Dr. Neidigh's August 15, 2012, evaluation of Winslow was not technically a competency assessment, Dr. Neidigh's 2012 report states that within a month of his guilty plea, Winslow was aware of the nature of the charges against him, he was cooperative, and acting in an articulate and logical manner. Resp. Ex. 28.

Lastly, upon review of the entire record, the Court finds that Winslow fully met the competency standard outlined in Dusky at the time he entered his plea. See Dusky,

362 U.S. at 402 (holding competency is a sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding, and with a rational as well as factual understanding of the proceedings). Of import is Winslow's pro se petition for habeas corpus filed with the Florida Supreme Court on August 2, 2012, one month before Winslow entered his plea.[6] Resp. Ex. 19. In the pleading, Winslow accurately details his pending criminal charges including the precise dollar amount of his bond. Id. Winslow explains that he provided all three of his court appointed attorneys with valuable information to help his case, but they either refused to investigate or claimed they did not find Winslow's information useful. Id.

Rather than painting a picture of incompetency, Winslow's pro se letter shows that he fully understood the charges against him, but refused to admit culpability while experiencing frustration with his attorneys' inability to locate exculpatory evidence. See, e.g., Coleman v. Jones, No. 1:16-cv-00053-WTH-CAS, 2018 WL 1278759, at *2 (N.D. Fla. Mar. 12, 2018) (relying on petitioner's pro se motion to reduce sentence as evidence that petitioner was competent at time of plea). Winslow's pro se representations corroborate Dr. Mhatre's finding that Winslow was competent "and his perceived lack of knowledge of the legal system [was] an elaborate plan to malinger and absolve himself of any criminal responsibility." Resp. Ex. 8 at 6. Winslow understood that he was facing serious charges and he obviously understood the role of his defense attorneys, the prosecutor, and the judge. While Winslow may have

_____

[6] Winslow's letter is dated July 25, 2012, but it does not include a prison stamp or a dated certificate of service. Resp. Ex. 19. As such, it is considered filed on the date affixed to the clerk's file stamp.

disagreed with some of his attorneys' decisions, Winslow was able to communicate with his attorneys and assist them in the defense of his case.

Further, Winslow's verbal representations to the circuit court during his plea hearing showed Winslow's understanding of the proceedings. <u>See</u> Resp. Ex. 15. Winslow answered each of the circuit court's questions coherently and intelligently with a full understanding of the nature of his plea. <u>Id.</u> After considering Winslow's representations, the circuit court found that Winslow entered his plea freely, willingly, and voluntarily. <u>Id.</u> at 8.

In sum, considering the totality of the circumstances surrounding Winslow's plea, Winslow has not presented clear and convincing circumstances that create a substantial doubt as to his competency at the time he entered his plea. While it is relevant that Winslow was found incompetent on one occasion, seventeen months before his plea, that evidence is not sufficient to overcome Dr. Neidigh's and Dr. Mhatre's subsequent reports and the overwhelming evidence of Winslow's competence at the time of his plea colloquy. Accordingly, Winslow cannot demonstrate a substantive due process violation, and in turn, has failed to show that counsel's alleged deficiency resulted in actual prejudice.

Accordingly, it is **ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability.  Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[7]

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of July, 2018.


TIMOTHY J. CORRIGAN
United States District Judge

Jax-7
C:     Darren Robert Winslow, #J48313
       Counsel of record

---

[7] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.